UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| **LAWRENCE MORRIS,**<br>　　　　　　　　　　　Petitioner,<br>v.<br>**KATHY MENDOZA-POWERS, Warden,**<br>　　　　　　　　　　　Respondent. | CASE NO. 07cv375 H (PCL)<br>**REPORT & RECOMMENDATION RE DENYING PETITION FOR WRIT OF HABEAS CORPUS AND DENYING MOTION FOR DISCOVERY.** |

**I.  INTRODUCTION**

　　On February 26, 2007, Lawrence Morris ("Petitioner"), a state prisoner currently incarcerated at Avenal State Prison, proceeding *pro se*, filed a Petition for Writ of Habeas Corpus pursuant to 28 U.S.C. § 2254.  (Pet.)  Petitioner challenges a September 13, 2005 decision by the Board of Parole Hearings ("Board") denying him parole.  In response, Respondent filed an Answer and lodged portions of the record with the Court.  (Doc. No. 14.)  Petitioner subsequently filed a Traverse.  (Doc. No. 16.)  After reviewing all the pertinent arguments and documentation, the Court recommends that the Petition be DENIED.

///
///
///
///

## II.  UNDERLYING FACTS

As summarized by the Court of Appeal, "[t]he facts of [Petitioner's] crime are as follows:"

> After a night of drinking, Morris and a codefendant drove to the apartment of the victim, Lee Hill, for the purpose of getting Hill intoxicated, driving him to the desert and killing him. Although Morris and Hill were close friends, Morris was angry with Hill about financial issues and Hill's attempt to rape Morris' wife. Hill agreed to accompany Morris and the codefendant. When they were in an isolated area, Morris approached Hill from behind and cut his throat with a knife. After Hill fell to the ground, the codefendant cut off Hill's genitals and stabbed him in the back of the skull. Morris and the codefendant took Hill's identification and left him there, where his decomposed remains were later discovered by some campers.

(Lodgment 6 at 1-2.)

## III.  STATE PROCEEDINGS

Petitioner was convicted of first degree murder [CAL. PENAL CODE §§ 187, 189] with use of a deadly weapon [Id. §12022(b)]. (Lodgment 1.) On or about April 26, 1988, Petitioner was sentenced to 26 years to life in prison, with the possibility of parole. (Pet.) When the possibility was first considered, the Board denied Petitioner parole in a decision dated September 13, 2005. (Lodgment 2 at 72.)

On April 21, 2006, Petitioner filed a Petition for Writ of Habeas Corpus with the state court appealing the Board's ruling. (Lodgment 3.) The Superior Court of San Diego County evaluated and then denied his request on June 16, 2006. (Lodgment 4.) Next, Petitioner applied for a Writ to the Court of Appeal, Fourth Appellate District. (Lodgment 5.) Again, his Petition was denied. (Lodgment 6.) Finally, Petitioner appealed to the California Supreme Court. (Lodgment 7.) The California Supreme Court also denied the Petition, in just four words. (Lodgment 8.)

## IV.  STANDARD OF REVIEW

Title 28, United States Code, § 2254(a), sets forth the following scope of review for federal habeas corpus claims:

> The Supreme Court, a Justice thereof, a circuit judge, or a district court shall entertain an application for a writ of habeas corpus in behalf of a person in custody pursuant to the judgment of a State court only on the ground that he is in custody in violation of the Constitution or laws or treaties of the United States.

28 U.S.C.A. § 2254(a) (West 2007.)

///

///

The present petition was filed after the President signed into law the Anti-terrorism and Effective Death Penalty Act of 1996 ("AEDPA"), Pub. L. No. 104-132, 110 Stat. 1214. Under 28 U.S.C. § 2254(d), as amended by AEDPA:

> (d) An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim—
>
> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
>
> (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C.A. § 2254(d) (West Supp. 2007).

A state court's decision may be found to be "contrary to" clearly established United States Supreme Court ("Supreme Court") precedent: (1) "if the state court applies a rule that contradicts the governing law set forth in [the Court's] cases" or (2) "if the state court confronts a set of facts that are materially indistinguishable from a decision of [the] Court and nevertheless arrives at a result different from [the Court's] precedent." Williams v. Taylor, 529 U.S. 362, 405-06 (2000). A state court decision may involve an "unreasonable application" of clearly established federal law, "if the state court identifies the correct governing legal rule from this Court's cases but unreasonably applies it to the facts of the particular state prisoner's case," or, "if the state court either unreasonably extends a legal principle from our precedent to a new context where it should not apply or unreasonably refuses to extend that principle to a new context where it should apply." Id. at 407.

"[A] federal habeas court may not issue the writ simply because the court concludes in its independent judgment that the relevant state-court decision applied clearly established federal law erroneously or incorrectly. . . Rather, that application must be objectively unreasonable." Lockyer v. Andrade, 538 U.S. 63, 75-76 (2003) (internal quotation marks and citations omitted). Clearly established federal law "refers to the holdings, as opposed to the dicta, of [the United States Supreme] Court's decisions." Williams, 529 U.S. at 412.

Finally, habeas relief is also available if the state court's adjudication of a claim "resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented

in state court." 28 U.S.C.A. § 2254(d)(2) (West Supp. 2007).  In order to satisfy this provision, Petitioner must demonstrate that the factual findings upon which the state court's adjudication of his claim rests are objectively unreasonable, assuming it rests on a factual determination.  Miller-El v. Cockrell, 537 U.S. 322, 340 (2003).  This Court will presume the state court's factual findings are correct, and Petitioner may overcome that presumption only by clear and convincing evidence.  28 U.S.C.A. § 2254(e)(1) (West Supp. 2007).

In the event there is no reasoned decision from the state's highest court, the Court "looks through" to the underlying appellate court decision.  Ylst v. Nunnemaker, 501 U.S. 797, 801-806 (1991).  If the dispositive state court order does not "furnish a basis for its reasoning," federal habeas courts must conduct an independent review of the record to determine whether the state court's decision is contrary to, or an unreasonable application of, clearly established Supreme Court law.  See Delgado v. Lewis, 223 F.3d 976, 982 (9th Cir. 2000) (overruled on other grounds by Lockyer, 538 U.S. at 75-76); Himes v. Thompson, 336 F.3d 848, 853 (9th Cir. 2003).  However, a state court need not cite Supreme Court precedent when resolving a habeas corpus claim because "so long as neither the reasoning nor the result of the state-court decision contradicts [Supreme Court precedent]" the state court decision will not be "contrary to" clearly established federal law.  Early v. Packer, 537 U.S. 3, 8 (2002).

## V.  DUE PROCESS AND THE RIGHT TO A PAROLE HEARING

While Petitioner concedes he received a parole hearing which ended with the panel recounting the reasons Petitioner did not merit parole, he calls the proceedings a "sham."  (Pet. P. & A. at 8.)  Petitioner contends the Board predetermined the result of the hearing, "then cited a mish-mash of circumstances for a *post hoc* rationalization of the decision already made," denying him due process.  (Id.)  Respondent counters that clearly established Supreme Court precedent "simply requires that [an] inmate be given an opportunity to be heard and be advised of the reasons he was not found suitable for parole." (Doc. No. 14 P. & A. at 9.)   Consequently, if the former two criteria are met, as they were here, Respondent insists, a predetermined outcome in a parole hearing would not violate Petitioner's rights.  Regardless, Respondent does not concede the hearing's outcome was predetermined; she argues the California Court of Appeal correctly found that "the Board considered proper factors in an individualized manner and there was some evidence to support the Board's decision."  (Id. at 10.)

*A. Liberty Interest in Parole*

The Fifth and Fourteenth Amendments prohibit the government from depriving an inmate of life, liberty, or property without due process of law. U.S. CONST. amends. V, XIV. In the parole context, a violation of due process occurs when (1) an inmate has been deprived of a constitutionally protected liberty interest in parole, and (2) the inmate has been denied adequate procedural protections in the parole process. See, e.g., Biggs v. Terhune, 334 F.3d 910, 913 (9th Cir. 2003).

As to the liberty interest, the Supreme Court in Greenholtz v. Inmates of Nebraska Penal, 442 U.S. 1 (1979) and Board of Pardons v. Allen, 482 U.S. 369 (1987) held that "a state's statutory scheme, if it uses mandatory language, 'creates a presumption that parole release will be granted' when or unless certain designated findings are made, and thereby gives rise to a constitutional liberty interest." McQuillion v. Duncan, 306 F.3d 895, 901 (9th Cir. 2002) (citing Greenholtz and Allen ). Consequently, California's statutory language is decisive on the issue. In McQuillion, after examining the language of California Penal Code § 3041(b) regarding when parole should be granted, the Ninth Circuit declared that "[u]nder the 'clearly established' framework of Greenholtz and Allen,... California's parole scheme gives rise to a cognizable liberty interest in release on parole." McQuillion, 306 F.3d at 902; see also Biggs v. Terhune, 334 F.3d 910, 914 (9th Cir. 2003) ("Section 3041 of the California Penal Code creates in every inmate a cognizable liberty interest in parole which is protected by the procedural safeguards of the Due Process Clause.").

Petitioner then has a protected liberty interest in parole.

*B. Procedural Protections in the Parole Process*

An inmate has received due process in the parole process if two requirements are met. First, the inmate must be afforded an opportunity to be heard before an unbiased decision-maker, and in the case of a denial of parole, must be informed of the reasons underlying the decision. Jancsek v. Oregon Bd. of Parole, 833 F.2d 1389, 1390 (9th Cir. 1987). Second, "some evidence" must support the decision to grant or deny parole. Id. (adopting the "some evidence" standard established by the Supreme Court in Superintendent v. Hill, 472 U.S. 445, 457 (1985)). Case law is replete with warnings that the some evidence standard is minimal. See id. (requiring that "the record is not so devoid of evidence that the findings of the disciplinary board were without support or otherwise arbitrary"). The evidence

underlying the grant or denial of parole must have "some indicia of reliability;" however, only a "modicum of evidence" is required to justify a board's decision. Id. at 455.

### C. Predetermined Outcomes in Parole Hearings

As discussed above, Respondent contends, if the two criteria are met, a predetermined outcome in a parole hearing would not deny an inmate due process. (Doc. No. 14 P. & A. at 9, 11.) Although the proposition is outrageous, defying common sense notions of justice and fundamental fairness, Respondent's argument is at least clever. She emphasizes that the AEDPA binds the Court to consider only firmly established Supreme Court precedent. (Doc. No. 14 P. & A. at 11.) Next, she notes the Supreme Court has never held in a prison parole case that an outcome cannot be predetermined. (Id.) Lastly, Respondent attacks Edwards v. Balisok, 520 U.S. 641 (1997), the case Petitioner cites for the proposition that "a predetermined outcome is *per se* invalid." (Pet. P. &A. at 8.) Respondent argues that the pertinent propositions in Balisok are *dicta*. (Doc. No. 14 P. & A. at 11.) Moreover, Balisok relies on Wolff, which concerned disciplinary, not parole, hearings for prisoners. Respondent argues Greenholtz rejected the contention that the due process requirements set forth in Wolff apply to parole hearings. (Doc. No. 14 P. & A. at 11.)

Respondent's take on Greenholtz is unduly broad, if not fallacious. The Supreme Court held "[p]rocedures designed to elicit specific facts, such as those required in Morrissey, Gagnon, and Wolff, are not necessarily appropriate to a Nebraska parole determination." Greenholtz, 442 U.S. at 14. Plainly, prohibiting a parole board from predetermining an outcome is not a procedure designed to elicit specific facts. Greenholtz does not repudiate Balisok. Greenholtz does paint a picture of the parole hearing process that is incompatible with predetermined outcomes:

> When the Board defers parole after the initial review hearing, it does so because examination of the inmate's file and the personal interview satisfies it that the inmate is not yet ready for conditional release. The parole determination therefore must include consideration of what the entire record shows up to the time of the sentence, including the gravity of the offense in the particular case. The behavior record of an inmate during confinement is critical in the sense that it reflects the degree to which the inmate is prepared to adjust to parole release. At the Board's initial interview hearing, the inmate is permitted to appear before the Board and present letters and statements on his own behalf. He is thereby provided with an effective opportunity, first, to insure that the records before the Board are in fact the records relating to his case; and, second, to present any special considerations demonstrating why he is an appropriate candidate for parole. Since the decision is one that must be made largely on the basis of the inmate's files, this procedure adequately safeguards against serious risks of error and thus satisfies due process.

Id. at 14.

However, debating whether Balisok applies and the requirements of Greenholtz pares the point too finely. A predetermined outcome goes against the very notion of due process. As Petitioner emphatically states, "[c]ourts to [sic] numerous to list have recognized that the right to a disinterested decision-maker, who has not prejudged the case, is part of the fundamental guarantee against arbitrary and capricious government conduct in the... parole context." (Pet. P. & A. at 7.) The guarantee of due process entails the right to a fact-finder who has not predetermined the outcome of a hearing. See Withrow v. Larkin, 421 U.S. 35 (1975) (a fair trial in a fair tribunal is a basic requirement of due process, and this rule applies to administrative agencies which adjudicate as well as to courts), Edwards v. Balisok, 520 U.S. 641 (1997) (recognizing due process claim based on allegations that prison disciplinary hearing officer was biased and would suppress evidence of innocence), Schweiker v. McClure, 456 U.S. 188, 195 (1982) ("due process demands impartiality on the part of those who function in judicial or quasi-judicial capacities"), O'Bremski v. Maass, 915 F.2d 418, 422 (9th Cir. 1990)(stating an inmate is "entitled to have his release date considered by a praole board that was free from bias or prejudice"); Bakalis v. Golembeski, 35 F.3d 318, 326 (7th Cir.1994) (a decision-making body "that has prejudged the outcome cannot render a decision that comports with due process"); see In re Rosenkrantz, 29 Cal.4th. 616, 677 (2002) (holding that a parole decision "must reflect an individualized consideration of the specified criteria and cannot be arbitrary and capricious"). Thus, if the Board prejudged the Petitioner's suitability for parole, he would be entitled to habeas relief.

### D. Discussion

Petitioner's chief, and only, evidence that the outcome was predetermined are remarks made by the presiding commissioner at his parole hearing. (Pet. P. & A. at 8-11.) Petitioner highlights three examples of dialog that he believes irrefutably establishes that his hearing was a sham:

Example No. 1

    PETITIONER: I've prepared a resume. I didn't include it in my package.

    PRESIDING COMMISSIONER: You will for the next time.

(Lodgment 2 at 29:24-27.)

///

Example No. 2

PRESIDING COMMISSIONER: And every couple of years you'll have the opportunity to see a psychologist, and that's what they do.

(Id. at 52:14-16.)

Example No. 3

PRESIDING COMMISSIONER: ... because this is building a foundation so that the next time you come by for a parole hearing, you're going to have the answers to that question that you're asking yourself now, and the question that I'm asking you.

(Id. at 53:2-6.)

As was the California Court of Appeal ("Court of Appeal"), the last state court to issue a reasoned opinion on the Petition, this Court is underwhelmed by Petitioner's evidence. (Lodgment 6.) "The Board's references to subsequent parole hearings were made in the context of the possibility that parole would be denied, not that it was a foregone conclusion." (Id. at 2.) Back and forth exchanges, especially verbal communications, are often imprecise, filled with misnomers, abridgments, unqualified thoughts, and the like. The Board commissioner began the hearing by explaining to Petitioner, "[if] you do not get a date [for parole] today, this hearing will form a foundation for all future hearing." (Lodgment 2 at 7:17-18.)   The commissioner's subsequent failure to preface three of his comments in fifty-eight pages worth of dialogue with "in the event that your parole is denied" does not impugn the integrity of the proceedings.

Rather, the Board diligently assessed Petitioner's qualifications for parole. Adhering to the factors spelled out in 15 C.C.R. § 2402(c), (d), the Board considered Petitioner's underlying offense, (Lodgment 6 at 13:25-17:8, 59:12-60:14), prior criminal history, (Id. at 60:14-61:17), institutional behavior, (Id. at 60:17-63:18),  psychological factors, (Id. at 64:4-65:18), and parole plans, (Id. At 65:18-66:14). And, in their decision, the Board articulated their reasons for finding against Petitioner, referencing the relevant facts. The Board concluded:

> ...the commitment offense (indiscernible) that Mr. Hill took your hands and the hands of your crime partner was especially cruel – cruel and callous. It was clearly calculated and dispassionate. There was no passion for another human being there. And the motive for this crime was inexplicable, trivial. Trivial.... And then you just left the guy up there. Just left him dead and emasculated and ended up, as the Deputy District Attorney said, left him out

there for the animals. We are going to deny you for four years, and in this four years you've got a lot of work to do.

(Id. at 70:10-71:3.) The record is straightforward. Petitioner's machinations of a rigged process with a predetermined outcome are unsupported. To the contrary, the record demonstrates Petitioner was found unsuitable for parole because the Board – after reviewing Petitioner's file and interviewing him – determined Petitioner's commitment offense was exceedingly inhumane and he needed additional time to prepare himself for parole. (Id. at 70:10-71:3)(referencing criteria found in 15 C.C.R. § 2402(c).)

The Board was required to hold a hearing and support their decision with some evidence. Jancsek, 833 F.2d at 1390. Applying a standard comparable to one mandated by federal law, the Court of Appeal concluded that "the Board considered the proper factors in an individualized manner and there is some evidence to support its decision" and denied the petition. (Lodgment 6 at 2.) For the above reasons, the Court finds its decision was not an unreasonable application of firmly established Supreme Court precedent. The Petition for Writ of Habeas Corpus should be DENIED.

## VI. REQUEST FOR DISCOVERY

In a separate motion, Petitioner has also requested discovery. (Doc. No. 17.) Habeas petitioners in federal court under 28 U.S.C. § 2254 are not entitled to discovery as a matter of right. Bracy v. Gramley, 520 U.S. 899, 904 (1997). According to Rule 6(a) of the Rules Governing § 2254 cases, "a judge may, for good cause, authorize a party to conduct discovery under the Federal Rules of Civil Procedure and may limit the extent of discovery" as the judge sees fit. 28 U.S.C.A. foll. § 2254.

Here, Petitioner seeks to bolster his claim that his suitability for parole was prejudged by demonstrating that historically very few prisoners are paroled after their initial hearings. (Doc. No. 17 at 1-2.) Petitioner portends discovering that in the last five years only eight prisoners out of a thousand have been paroled after their initial hearings. (Id. at 2.) However, if true, such evidence does not necessarily help Petitioner. Petitioner's statistical "measurement" cannot show the reason for the denial of parole, proper or improper. It could well be true that only eight of his hypothetical one thousands prisoners were suitable for parole. More importantly, the Court had a sufficient record to consider Petitioner's particular parole hearing. Accordingly, Petitioner has failed to demonstrate good cause and his request for discovery is DENIED.

///

## VII.  CONCLUSION

**IT IS HEREBY RECOMMENDED** that the Court issue an Order:  (1) approving and adopting this Report and Recommendation; and (2) directing that Judgement be entered DENYING the Petition.

IT IS ORDERED that, **no later than November 9, 2007**, any party to this action may file written objections with the Court and serve a copy on all parties.  The document should be captioned "Objections to Report and Recommendation."  Any reply to Objections shall be filed **on or before November 16, 2007.**  The parties are advised that failure to file objections within the specified time may waive the right to raise those objections on appeal of the Court's order.  See Turner v. Duncan, 158 F.3d 449, 455 (9th Cir. 1998); Martinez v. Ylst, 951 F.2d 1153 (9th Cir. 1991).

DATED: October 5, 2007

Peter C. Lewis
U.S. Magistrate Judge
United States District Court

cc:  The Honorable Marilyn L. Huff
     All Counsel of Record