# UNITED STATES DISTRICT COURT
# SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| LAWRENCE MORRIS,<br><br>　　　　　　Petitioner,<br>vs.<br><br>KATHY MENDOZA-POWERS,<br>Warden,<br><br>　　　　　　Respondent. | CASE NO. 07-CV-0375-H (PCL)<br><br>ORDER ADOPTING REPORT AND RECOMMENDATION, DENYING PETITION FOR WRIT OF HABEAS CORPUS PURSUANT TO 28 U.S.C. § 2254, AND DENYING MOTION FOR DISCOVERY. |

Petitioner Lawrence Morris ("Petitioner") filed a petition for writ of habeas corpus pursuant to 28 U.S.C. § 2254 on February 26, 2007. (Doc. No. 1.) He challenges a September 13, 2005 Board of Parole Hearings' ("Board") decision denying his parole. Respondent filed an Answer on July 16, 2007. (Doc. No. 14.) On August 21, 2007, Petitioner filed a traverse. (Doc. No. 16.) The Magistrate Judge issued a Report and Recommendation on October 5, 2007, recommending that the Court deny the petition and deny Petitioner's motion for discovery. (Doc. No. 18.) Petitioner filed objections to the Report and Recommendations on November 9, 2007. (Doc. No. 19.) Respondent did not file a reply to Petitioner's objections.

After careful consideration, the Court ADOPTS the Report and Recommendation, DENIES the petition, and DENIES the motion for discovery. The Court also DENIES a Certificate of Appealability.

## **Background**

The California Court of Appeal described the facts as follows:

> After a night of drinking, Morris and a codefendant drove to the apartment of the victim, Lee Hill, for the purpose of getting Hill intoxicated, driving him to the desert and killing him. Although Morris and Hill were close friends, Morris was angry with Hill about financial issues and Hill's attempt to rape Morris's wife. Hill agreed to accompany Morris and the codefendant. When they were in an isolated area, Morris approached Hill from behind and cut his throat with a knife. After Hill fell to the ground, the codefendant cut off Hill's genitals and stabbed him in the back of the skull. Morris and the codefendant took Hill's identification and left him there where his decomposed remains were later discovered by some campers.

(Lodgment 6 at 1-2.)

Petitioner was convicted of first degree murder with a deadly weapon in violation of California Penal Code §§ 187, 189, and 12022(b). (Lodgment 1.) On or about April 26, 1988, the trial court sentenced Petitioner to 26 years to life in prison, with the possibility of parole. (Lodgment 1.)

On September 13, 2005, the Board held Petitioner's initial parole consideration hearing. (Doc. No. 1) Petitioner contends that the Board's Presiding Commissioner ("Commissioner") made statements during the hearing that demonstrated that the Board had predetermined the hearing's outcome. (Doc. No. 1-2.) During the hearing, the Board considered numerous parole suitability factors, including Petitioner's social history, his past and present mental state, his criminal history, his commitment offense, his behavior before, during and after the crime, and his attitudes towards the crime. In particular, the Board considered Petitioner's six rule violations while institutionalized, his resistance to substance abuse assistance, his cruel and calculated commitment offense, his trivial motive in committing the offense, his non-violent history prior to the commitment offense, and his recent psychiatric report. (Lodgment 2 at 59-64.) The Board denied Petitioner's parole based on these factors. (Id. at 59:4-10.)

On April 21, 2006, Petitioner filed a petition for writ of habeas corpus with the state court, appealing the Board's ruling. (Lodgment 3.) The Superior Court of San Diego County denied his request on June 16, 2006. (Lodgment 4.) On September 6,

2006, the California Court of Appeal also denied the petition. (Lodgment 6.) On December 13, 2006, the California Supreme Court denied the petition for review. (Lodgment 8.) Petitioner filed his petition to this Court on February 27, 2007. (Doc. No. 1.)

## Standards of Review

**A.   Standard of Review of Magistrate Judge's Report and Recommendation**

The district court "may accept, reject, or modify, in whole or in part, the findings or recommendations made by the magistrate judge." 28 U.S.C. § 636(b)(1). If a party objects to any portion of the report, the district court "shall make a de novo determination of those portions of the report . . . to which objection is made." Id. The Court reviews de novo the magistrate judge's conclusions of law. Britt v. Simi Valley Unified School Dist., 708 F.2d 452, 454 (9th Cir. 1983) overruled on other grounds by United States v. Reyna-Tapia, 328 F.3d 1114, 1121-22 (9th Cir. 2003).

**B.   Scope of Review for 28 U.S.C. § 2254 Petitions**

28 U.S.C. § 2254(a) sets forth the scope of review for federal habeas corpus petitions:

> The Supreme Court, a Justice thereof, a circuit judge, or a district court shall entertain an application for a writ of habeas corpus in behalf of a person in custody pursuant to the judgment of a State Court only on the ground that he is in custody in violation of the Constitution or laws or treaties of the United States.

Moreover, this action is governed by the Anti-Terrorism and Effective Death Penalty Act of 1996 ("AEDPA"), Pub. L. No. 104-132, 110 Stat. 1214. Under 28 U.S.C. § 2254(d), as amended by the AEDPA:

> An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim–
> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
> (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. §2254(d).

The reviewing court may find a state court's decision "contrary to" clearly established United States Supreme Court ("Supreme Court") precedent: (1) "if the state court applies a rule that contradicts the governing law set forth in [the Supreme Court's] cases," or (2) "if the state court confronts a set of facts that are materially indistinguishable from a decision of [the Supreme] Court and nevertheless arrives at a result different from [the Court's] precedent." Williams v. Taylor, 529 U.S. 362, 405-06 (2000). A state court decision may involve an "unreasonable application" of clearly established federal law, "if the state court identifies the correct governing legal rule from [the Supreme] Court's cases but unreasonably applies it to the facts of the particular state prisoner's case." Id. at 407. Alternatively, the reviewing court may find an "unreasonable application" "if the state court either unreasonably extends a legal principle from [Supreme Court] precedent to a new context where it should not apply or unreasonably refuses to extend that principle to a new context where it should apply." Id.

## Analysis

In his petition, Petitioner makes two contentions. First, Petitioner asserts that an inmate has a liberty interest in release on parole. Second, Petitioner alleges that the Board violated his due process rights because it had predetermined his parole hearing's outcome. In response, Respondent contends that the state courts' resolution of Petitioner's claims were neither contrary to, nor an unreasonable application of, clearly established federal law.

**A.    Liberty Interest in a Parole Hearing**

Petitioner argues that an inmate has a federally protected liberty interest in release on parole. If a state's statutory parole scheme uses mandatory language, it may create a presumption that the Board will grant parole release when or unless it makes certain designated findings. Greenholtz v. Inmates of Nebraska Penal Correctional Complex, 442 U.S. 1, 11-12 (1979). In such a case, an inmate has a legitimate expectation in

1  parole that the state cannot deny without affording adequate procedural due process
2  protections. Board of Pardons v. Allen, 482 U.S. 369, 373-81 (1987); Greenholtz, 442
3  U.S. at 11-16.

4  California's parole scheme uses mandatory language that is largely parallel to the
5  schemes found in Allen and Greenholtz. Cal. Penal Code § 3041(b). See also In re
6  Rosenkrantz, 29 Cal.4th 616, 661 (2002) ("prisoners possess a protected liberty interest
7  in connection with parole decisions rendered by the Board").  Petitioner therefore has
8  a federally protected liberty interest in release from parole.

**B.    Due Process of Parole Hearing**

Petitioner challenges the due process of his parole hearing on the grounds that the Board had predetermined his parole hearing's outcome. Addressing the Petitioner's allegations, the California Court of Appeal held that "[t]he Board's references to subsequent parole hearings were made in the context of the possibility that parole would be denied, not that it was a foregone conclusion." (Lodgment 6.) The Court of Appeal held that the Board did not violate the Petitioner's due process rights. (Id.)

By statute, when determining parole suitability, the Board "shall normally set a parole release date," Cal. Pen. Code § 3041(a), "unless it determines that the gravity of the current convicted offense or offenses, or the timing and gravity of current or past convicted offense or offenses, is such that consideration of the public safety requires a more lengthy period of incarceration for this individual." Cal. Pen. Code § 3041(b). An inmate is unsuitable for parole if the panel determines that the inmate will pose an unreasonable risk of danger to society if released from prison. 15 C.C.R. §§ 2281(a), 2402(a). The Board shall consider all relevant and reliable information available to it, including the inmate's social history, past and present mental state, criminal history, commitment offenses, behavior before, during and after the crime, attitudes towards the crime, and any other information that bears on the inmate's suitability for release. 15 C.C.R. §§ 2281(b), 2402(b).

A parole release determination is not subject to all the due process protections of

an adversarial proceeding. Pedro v. Oregon Parole Board, 825 F.2d 1396, 1399 (9th Cir. 1987); see also Greenholtz, 442 U.S. at 12 (explaining that due process is flexible and calls for such procedural protections as the particular situation demands). The Board must give the inmate advance written notice of a hearing, Pedro, 825 F.2d at 1399, the Board must afford the inmate an opportunity to be heard, Greenholtz, 442 U.S. at 16, if the inmate is denied parole, the Board must tell the inmate why he falls short of qualifying for parole, Id., and the Board must rely on some evidence having some indicia of reliability. Superintendent v. Hill, 472 U.S. 445, 455 (1985); Cato v. Rushen, 824 F.2d 703, 705 (9th Cir. 1987). Petitioner contends that while some evidence supports the Board's conclusion, the Board's decision is "reversible per se as it was clearly 'predetermined.'" (Doc. No. 1-2.)

Petitioner argues that the Board predetermined his parole hearing's outcome in violation of state and federal due process. (Doc. No. 1-2.) See Edwards v. Balisok, 520 U.S. 641, 644 (1997) (recognizing a due process claim based on allegations that a prison disciplinary hearing officer was biased and would suppress evidence of innocence); O'Bremski v. Maass, 915 F.2d 418, 422 (9th Cir. 1990) (stating that an inmate is entitled to have a Board consider his release date without bias or prejudice); In re Rosenkrantz, 29 Cal.4th at 677 (holding that a parole decision "must reflect an individualized consideration of the specified criteria and cannot be arbitrary and capricious").

Petitioner's evidence falls short of what clearly established federal law requires to establish that the Board had predetermined his parole hearing's outcome. A petitioner may demonstrate that a board had predetermined a hearing's outcome with substantiated evidence beyond mere speculation. For example, in Balisok, the trier of fact "concealed exculpatory witness statements and refused to ask specified questions of requested witnesses which prevented respondent from introducing extant exculpatory material and 'intentionally denied' him the right to present evidence in his defense." Balisok, 520 U.S. at 644 (inner citation omitted). In O'Bremski, the petitioner pointed

to a letter from a board member stating, "[a]s a Board, we are doing everything we legally can to defer parole," to show the Board's bias. O'Bremski, 915 U.S. at 422. In Schweiker v. McClure, 456 U.S. 188, 195 (1982), the Supreme Court noted that hearing officers are presumed unbiased. See also Withrow v. Larkin, 421 U.S. 35, 47 (1975); United States v. Morgan, 313 U.S. 409, 421 (1941). The court noted that "[t]his presumption can be rebutted by a showing of conflict of interest or some other specific reason for disqualification." Schweiker, 456 U.S. at 195. See Gibson v. Berryhill, 411 U.S. 564, 578-79 (1973); Ward v. Village of Monroeville, 409 U.S. 57, 60 (1972).

The Board offered a detailed rationale for denying Petitioner's parole based on the particularized facts of his case. The Board properly considered Petitioner's social history, his past and present mental state, his criminal history, his commitment offense, his behavior before, during and after the crime, and his attitudes towards the crime. 15 C.C.R. § 2402(c). In particular, the Board considered Petitioner's six rule violations while institutionalized, his resistance to substance abuse assistance, his cruel and calculated commitment offense, his trivial motive in committing the offense, his non-violent history prior to the commitment offense, and his recent psychiatric report. (Lodgment 2 at 59-64.)

The Commissioner's statements, taken in the totality of the proceeding, do not sufficiently evidence that the Board had predetermined the hearing's outcome. The "[C]ommissioner's []failure to preface three of his comments in fifty-eight pages worth of dialogue with 'in the event that your parole is denied' does not impugn the integrity of the proceedings." (Doc. No. 18.) Clearly established federal law does not permit a due process violation finding on the basis of such speculative evidence.

The state courts' resolution of Petitioner's claims did not result "in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States" or "in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." 28 U.S.C. §2254(d).

As to Petitioner's discovery request, the Court concludes that the Magistrate Judge acted within his discretion to deny Petitioner's motion for discovery. The Court concludes that the Judge did not abuse his discretion and his decision was legally correct.

**<u>Conclusion</u>**

For these reasons, the Court ADOPTS the Report and Recommendation, DENIES the petition, and DENIES the motion for discovery. The Court also DENIES a Certificate of Appealability.

IT IS SO ORDERED.

DATED: January 30, 2008

*[signature]*
MARILYN L. HUFF, District Judge
UNITED STATES DISTRICT COURT

COPIES TO:
All parties of record.